# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 626 | **DATE** | 9/16/2003 |
| **CASE TITLE** | Carbajal vs. Household Bank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. For the reasons stated, the court grants the defendants' motions to compel arbitration on the grounds stated herein. This action is dismissed. All other pending motions are moot. (84-1,60-1,59-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | | number of notices |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | | SEP 18 2003 |
| ✓ | Docketing to mail notices. | | | date docketed |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | courtroom deputy's initials | | date mailed notice |
| TP | | | Date/time received in central Clerk's Office | mailing deputy initials |

**Document Number**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROY CARBAJAL, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| | ) | No. 00 C 0626 |
| v. | ) ) | |
| HOUSEHOLD BANK, FSB, H&R BLOCK TAX SERVICES, INC., MELLON BANK (DE) N.A., GREENWOOD TRUST, BANC ONE, CHEMICAL BANK DELAWARE, COUNTY BANK, RIVER CITY BANK, FIRST SECURITY BANK, REPUBLIC BANK, and BANK OF SANTA BARBARA, | ) ) ) ) ) ) ) ) ) | Judge John A. Nordberg |
| Defendants. | ) ) | |

DOCKETED

SEP 1 8 2003

## MEMORANDUM OPINION AND ORDER

Before the court are motions to compel arbitration filed by the defendants. The motions are granted on the grounds set forth below, and the parties are ordered to proceed with arbitration.

## BACKGROUND

The following allegations are taken from plaintiff's Amended Complaint. On February 1, 1999, plaintiff Roy Carbajal went to an H&R Block office in Chicago to get his 1998 tax return filed and to get a "rapid refund" loan, which is something he had done in the past. H&R Block had offered this program for many years. Under the program, H&R Block arranged for the



customer to receive a short-term, high-interest loan from a third-party finance institution. (¶ 8.) The parties refer to these loans as refund anticipation loans or "RALs." (*Id.*) The loan is in the amount of the customer's expected tax refund minus certain fees and loan charges. The actual refund, which typically arrives two weeks later, is used to pay off the loan. (*Id.*)

As part of this process, plaintiff signed a four-page agreement called the "Loan Application And Certification For A Refund Anticipation Loan." *See* Ex. B. to Am. Cmplt. The parties refer to this agreement as the "RAL Agreement."[1] Plaintiff also signed an "Individual Income Tax Declaration for Electronic Filing" (Form 8453), which indicated that he would receive a tax refund of $5,001. *See* Ex. A to Am. Cmplt.

Plaintiff alleges that H&R Block and Household Bank tricked him by leading him to believe that he would be approved for an RAL and would receive it within a few days of his application. (¶ 34(A).) But instead of making the loan, Household and H&R Block denied his loan application, then submitted his tax return despite this fact, obtained his refund, used the refund to pay off old RAL-related debt that he allegedly owed to one or more of the defendants, and finally sent him the remainder on February 18, 1999. (¶ 20.) This amount was $1,822.05 – well short of the amount he expected to receive.

Although the RAL agreement appears to authorize the defendants to do what they did, plaintiff alleges that the RAL agreement is unenforceable and should be rescinded because the defendants made fraudulent representations and failed to explain to him that his loan application

---

[1] The RAL agreement was entered into between plaintiff and Household Bank. H&R Block is not a party to the agreement.

could be denied in this manner. Plaintiff also brings claims under the Fair Debt Collection

Practices Act, the Equal Credit Opportunity Act, and the Illinois Consumer Fraud Act.[2]

The original complaint was filed on January 31, 2000 and named eleven defendants. The

two principal defendants were H&R Block and Household International (which, as it later turns

out, was the wrong Household entity). The other defendants were nine banks that allegedly

conspired with H&R Block and Household Bank – Mellon Bank (DE) N.A., Greenwood Trust,

Banc One, Chemical Bank Delaware, County Bank, River City Bank, First Security Bank,

Republic Bank, and Bank of Santa Barbara.

Some (but not all) of the defendants were served in early 2000. Several of these

defendants then filed motions in which they argued that this dispute should be sent to arbitration

based on the mandatory arbitration provision contained in the RAL agreement. Because this

provision is important to our analysis, we will quote it in its entirety despite its length:

> ARBITRATION: By signing this RAL application or endorsing my 1999 RAL
> check which contains the Loan Agreement (collectively the "Agreements") I
> hereby agree that any claim or dispute (whether in contract, tort or otherwise) in
> any way relating to the Agreements or such similar agreements for prior years
> involving the same parties or relating to the relationships of such parties,
> including the validity or enforceability of this arbitration provision or any part
> thereof (collectively the "Claim"), shall be resolved, upon the election of either
> party, by binding arbitration pursuant to this arbitration provision and the Code of
> Procedure of the National Arbitration Forum in effect at the time the Claim is
> filed. No class actions are permitted without the consent of the parties hereto.
> Rules and forms of the National Arbitration Forum may be obtained by calling 1-
> 800-474-2371 and all Claims shall be filed by certified mail at any National
> Arbitration Forum office or at Post Office Box 50194, Minneapolis, Minnesota

---

[2]Plaintiff also seeks to bring a class action consisting of all people who (i) applied for an
RAL loan from 3 years of the date of the original complaint, whose RAL application was denied,
and whose refund was paid to one or more defendants to satisfy pre-existing debts the person
allegedly owed. (Am. Cmplt. ¶ 27.) Plaintiff has filed a motion for class certification, which this
Court has not ruled upon.

55405. Any participatory arbitration hearing that I attend will take place in the
federal judicial district in which I live. This arbitration agreement is made
pursuant to a transaction involving interstate commerce, and shall be governed by
the Federal Arbitration Act, 9 U.S.C. Sections 1-16. The award of the Arbitrator
shall apply relevant law pursuant to Section 3G above and provide written,
reasoned findings of act and conclusions of law, and shall not be subject to appeal,
unless the arbitrator's decision clearly conflicts with applicable law. Judgment
upon the award may be entered in any court having jurisdiction. Nothing in this
arbitration provision shall be construed to prevent HB's use of offset or other
contractual rights involving payment of my income tax refund or other amount on
deposit with HB to pay off any RAL debts or ERO or other fees now or hereafter
owed by me to HB or any other RAL Lender or ERO or third party pursuant to the
Agreements or similar prior agreements. The parties hereto acknowledge that
they have a right to litigate Claims in court, but they prefer to resolve any such
Claims through arbitration and hereby waive their rights to litigate such Claims in
court upon election of arbitration by either party. The parties hereto further agree
that any award hereunder shall be based on the claimant's actual compensatory,
economic damages, and equitable relief as appropriate, plus proportional punitive
damages, if any are deemed appropriate in the Arbitrator's discretion. Each party
hereto shall bear the expense of their respective attorney's fees regardless of
which party prevails. The decision of the Arbitrator and the amount of any Award
shall be kept confidential by the parties hereto. This arbitration provision shall
supersede any prior arbitration provision contained in any previous RAL or RAC
application agreement.

(¶ 6 of the RAL Agreement.)

Before plaintiff filed a response brief to the motions to dismiss, he received a notice of a
pending global class action settlement in a case before Judge Zagel here in the Northern District
of Illinois. There were actually two consolidated cases – *Zawikowski*, 98 C 2178 and *Turner*, 98
C 2550 (collectively "*Zawikowski*"). Although it is somewhat hard to believe, plaintiff claims
that this was the first time he had heard about these other RAL-related cases. Plaintiff asked for,
and received, an extension of time to file his response brief to the motions to compel arbitration.

Plaintiff filed a motion to intervene in *Zawikowski* and argued that his class claims should
be excluded from the settlement because otherwise they would be extinguished by the settlement

and subject to a *res judicata* bar. Judge Zagel held this motion in abeyance pending the final fairness hearing.

On June 30, 2000, plaintiff returned to this Court and filed a second extension for time to respond to the motions to compel arbitration. He stated that he had filed a motion to intervene in *Zawikowski* and that the motion was scheduled to be heard by Judge Zagel on July 11th. He further stated that Judge Zagel's ruling on the motion to intervene "likely" would moot the motions to compel arbitration and that it was "in the interest of judicial economy and all of the parties to await Judge Zagel's ruling prior to continuing with the briefing of Defendants' motions." (06/30/00 Pl. Mot. at 2.)

On July 31, 2000, Judge Zagel granted final approval of the class action settlement. Although the details of the settlement are not really important for the present motions, the settlement consisted of a $25 million payout as well as some other provisions. The effect of this settlement, if it had held up on appeal, would have been to stop many class actions lawsuits in progress in various jurisdictions throughout the country.[3] As part of the settlement approval process, Judge Zagel denied the motion to intervene filed by plaintiff.

Thereafter, a number of appeals were then taken to the Seventh Circuit including one filed by plaintiff on August 28, 2000, appealing the denial of his motion to intervene on behalf of the putative class.

---

[3]Since 1990, H&R Block and other defendants have been sued in over 20 class action lawsuits relating to the RAL program.

Briefing ensued in the Seventh Circuit. Given that this appeal was underway, this Court concluded that it would make sense to simply dismiss this action without prejudice. At the time of the dismissal, plaintiff had never filed any response brief to the motions to compel arbitration.

In April 2002, the Seventh Circuit issued its ruling in *Zawikowski*. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002). In the primary part of its ruling, the Seventh Circuit concluded that there were "suspicious circumstances" surrounding the $25 million global settlement and that the district court judge, as the fiduciary of the class, should have engaged in more scrutiny of the fairness of the settlement. *Id.* at 284. Although only a minor part of the opinion, the Seventh Circuit also held that the claims of the putative Carbajal class and the Peterson class "accidentally" got "swept up in the settlement" and that those claims should not have been included because they were "sharply different." *Id.* at 285-86.[4]

Thereafter, at plaintiff's request, this Court reinstated this case. Plaintiff filed an amended complaint, and the defendants again filed motions seeking to compel arbitration. The issue has been fully briefed (including the filing of supplemental briefs).

## DISCUSSION

The RAL agreement, as quoted above, contains a broad and facially binding arbitration provision, stating (among other things) that "any dispute claim or dispute (whether in contract, tort or otherwise) in any way relating to the Agreements or such similar agreements for prior years involving the same parties or relating to the relationships of such parties, including the validity or enforceability of this arbitration provision or any part thereof [] shall be resolved,

---

[4]The case was assigned to Judge Bucklo on remand. She held that the $25 million settlement was not fair and also severed the Peterson and Carbajal classes. *See Reynolds v. Beneficial Nat'l Bank*, 260 F.Supp.2d 680, 682 (N.D. Ill. 2003).

upon the election of either party, by binding arbitration." (¶ 6.) It is fair to say that this clause is broad on a number of levels. It includes encompassing language such as "any dispute" and "relating to." It also requires the parties to arbitrate not only disputes relating to the RAL agreement, but also disputes relating to the "relationships" of the parties. Finally, as will be discussed in detail below, it contains a provision stating that any disputes over the "validity or enforceability" of the arbitration provision itself will also be decided by the arbitrator.[5] Based on this broadly-worded arbitration clause, the defendants seek an order compelling arbitration.

Plaintiff raises three primary arguments in opposition. First, he contends that the RAL agreement, as well as the arbitration provision contained therein, were induced by fraud and are unconscionable and therefore unenforceable. Specifically relating to the arbitration provision, plaintiff raises various objections that mostly concern the fact that he cannot bring a class action. Defendants believe that the arbitration clause is generally fair and is certainly not so one-sided or oppressive as to be unconscionable under Delaware law.

Second, plaintiff alleges that the defendants who did not sign the RAL agreement (which includes all of them except Household Bank) may not rely on this arbitration provision. These defendants point out that plaintiff has alleged that all the defendants acted together in a conspiracy. Because plaintiff has chosen to lump these defendants together, the defendants argue, he should be equitably estopped from trying to bar them from participating in the arbitration. They further argue that they are third-party beneficiaries of the RAL agreement based on various provisions in the agreement.

---

[5] We will refer to this clause as the "validity or enforceability" clause.

Third, even if the arbitration agreement was initially enforceable, plaintiff argues that the defendants thereafter waived their right to arbitration by participating in the *Zawikowski* settlement process. This argument is directed primarily at H&R Block and Household Bank.

Although the defendants believe that they have winning arguments to each of these points, they also argue that the arbitrator should decide these disputes in the first instance. This argument is the obvious starting point in the analysis because, if the arbitrator should decide these issues, then this Court's role is at an end and this case should be sent to arbitration without further analyzing the merits of these arbitrability disputes in order to avoid prejudicing the arbitrator's decision.

## I.      Who Decides Arbitrability?

Applying the "validity or enforceability" clause in a straightforward manner, it would appear that all three arguments above – unconscionability, non-signatories, and waiver – are disputes over either the validity or enforceability of the arbitration provision and therefore should be decided by the arbitrator. Plaintiff, who does not really dispute that this is a natural reading of this clause, argues that the overall arbitration provision should have no effect because the RAL agreement is unenforceable due to fraud and unconscionability. According to this argument, it does not matter how clear or broad the arbitration provision might be because it is simply not enforceable.

This is not a new argument and has been made many times before. To resolve it, we must look closely at the Supreme Court's holding in *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395 (1967). Before doing so, however, a brief overview is warranted. In *First Options Of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the Supreme Court summarized three types of

questions that might arise in this context. The first one is the dispute on the merits between the parties. In this case, the dispute concerns whether the defendants improperly misled plaintiff into thinking he would get a rapid refund when they really planned to deny his application and then "intercept" his refund to pay off past debts. The second type of question is the "arbitrability" question. Did all these parties agree to arbitrate this dispute on the merits? The three disputes we have described above are examples of arbitrability disputes. The third question is sometimes referred to as the "who decides" question. Should a court decide the arbitrability question in the first instance or should that issue be left to the arbitrator such that the arbitrator will in effect be allowed to determine its own jurisdiction?

Under the Federal Arbitration Act, federal courts are put in the role of a gatekeeper – to make an initial determination that the dispute is one that the parties in fact have agreed to arbitrate. *See AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). The presumptive answer then to the "who decides" question is that it is the court and not the arbitrator. However, in *First Options*, the Supreme Court made it clear that, consistent with the general notion of freedom of contract, parties could agree ahead of time to allow the arbitrator to resolve arbitrability disputes:

> We believe the answer to the "who" question [] is fairly simple. Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute [], so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?

514 U.S. at 943. However, because there is a presumption that courts should decide arbitrability issues, the parties must provide "clear and unmistakable" evidence that they agreed otherwise. If the arbitration agreement is silent or ambiguous, then the default rule applies.

Unfortunately, this framework does not directly answer the question before us because, as we have said, even though the "validity or enforceability" clause would appear to be "clear and unmistakable" evidence, this arguably means nothing if the RAL agreement is not enforceable. The Supreme Court confronted this argument many years ago in *Prima Paint*. In that case, two companies – F&C and Prima Paint -- entered into a consulting agreement that included an arbitration clause. A week after the contract was signed, F&C declared bankruptcy. 388 U.S. at 398. Prima Paint later filed suit in federal court seeking rescission of the consulting agreement on the basis that F&C had fraudulently represented that it was solvent and able to perform its obligations under the agreement when it really intended to file a bankruptcy petition. F&C asked the court to stay the action pending arbitration. Prima Paint argued that the court had to resolve the fraudulent inducement argument first because, if it turned out that the consulting agreement was not enforceable, then logically there would be no arbitration agreement, given that it was contained in the same contract.

The Supreme Court rejected this argument and held that the arbitrator, rather than the court, should resolve the fraudulent inducement claim. It relied on the concept of "separability," holding that, as a matter of federal common law, arbitration clauses are separable from that the larger container contracts "in which they were embedded." *Id.* at 402. In other words, even though there is really usually only one agreement, a court should proceed *as if* there are two separate agreements such that one might be enforceable and the other not. Based on this

separability assumption, the Court then came up with the following rule: "if the claim is fraud in the inducement of the arbitration clause itself[,] the federal court may proceed to adjudicate it." *Id.* at 403-04. But if the claim of fraudulent inducement is directed at the "contract generally," then the matter should be decided by the arbitrator. *Id.* at 404. Although the Court did not give a detailed policy explanation, the primary justification given is that Congress made it clear that "the arbitration procedure [] be speedy and not subject to delay and obstruction in the courts." *Id.* The Court apparently believed that resolving fraudulent inducement claims directed at the overall agreement would complicate and slow down the initial arbitrability determination given to the federal courts.

Although the rule of *Prima Paint* has been subject to a fair amount of criticism over the years, it remains binding law today. *See Large v. Conseco Finance Servicing Corp.*, 292 F.3d 49, 53 (1st Cir. 2002).[6] The question thus arises as to whether (and how) this rule applies here. To answer this question, we must look at plaintiff's allegations. In Count I, he alleges that the *entire RAL agreement* should be rescinded because it was induced by fraud, lacks mutual consideration, and is unconscionable (¶¶ 34-36). Plaintiff is thus making a fraudulent inducement claim directed at the whole agreement very similar to the one made in *Prima Paint*.

---

[6]A number of circuits (including the Seventh Circuit) have carved out a limited exception, holding that rule of *Prima Point* "does not apply to allegations of nonexistent contracts." *Burden v. Check Into Cash of Kentucky*, 267 F.3d 483, 488 (6th Cir. 2001) (listing cases). Only a few fact scenarios, however, have come within this exception. *See Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 853 (11th Cir. 1992) (party claimed that her signature on the arbitration agreement was a forgery); *Spahr v. Secco*, 330 F.3d 1266, 1268 (10th Cir. 2003) (party signing arbitration agreement suffered from Alzheimer's disease); *Sphere Drake Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587 (7th Cir. 2001) (party claimed agent lacked authority to sign arbitration agreement). In contrast to those examples, this case involves a claim that the contract should be rescinded rather than declared void from the beginning. For these reasons, we find that this case does not fall within this narrow exception to *Prima Paint*.

Yet, in Count II, plaintiff alleges specifically that the *arbitration provision* should be rescinded based on a number of different arguments. However, one of these arguments (although not the only one) is that plaintiff was "induced to sign the RAL [agreement] by fraud." (¶ 40). This again takes us back to the rule in *Prima Paint*. In fact, earlier in his complaint, plaintiff makes a number of general allegations that apply equally to the RAL agreement and the arbitration clause. He alleges, for example, that H&R Block did not explain the key provisions of the contract to him, that these provisions were all inconspicuous, and that they were drafted in legalese. (¶ 25.) This suggests that, at a minimum, there is some overlap between the arguments directed at the overall agreement and those directed specifically at the arbitration clause. *See generally AT &T Techs.*, 475 U.S. at 649 (a court considering arbitrability disputes "is not to rule on the potential merits of the underlying claims."). Moreover, Count II is pled as an alternative to Count I. Thus, under the sequence set forth in plaintiff's own complaint, we should first rule on the larger fraudulent inducement argument in Count I and then, only if necessary, rule on the specific arbitration arguments in Count II. This process would violate *Prima Paint*.

It is true, as plaintiff points out, that he has asserted some arguments that are specifically and solely directed at the arbitration clause and that differ conceptually from the fraudulent inducement claim. His primary argument is that the arbitration clause is substantively unconscionable because (among other things) it prohibits class action lawsuits, requires that the arbitrator's decision and award be kept confidential, and requires consumers to pay their own attorneys' fees and costs. *See* Am. Cmplt. ¶ 39 (A-H). Plaintiff argues that these challenges to the arbitration provision are separate from those challenges directed at the overall agreement and

therefore can be extracted out from the larger dispute and effectively decided by this Court without violating *Prima Paint*.

As an initial matter, we question whether it is possible, as plaintiff claims, to extract this issue out from the larger unconscionability issue. As noted above, it is undisputed that there is some overlap in the two arguments. Plaintiff suggests that all we would have to do is to look at the objectionable arbitration provisions and decide whether they are "substantively" unconscionable on their face without regard to the factual context in which the agreement was signed. It is not clear to us why we should simply ignore the issue of whether the agreement is "procedurally" unconscionable, which is a factor typically considered in determining whether an agreement is unconscionable. *See, e.g., Basselen v. General Motors Corp.*, 2003 WL 21513123, *7 (Ill. App. Ct. July 1, 2003) (under Illinois law, a party asserting unconscionability must demonstrate *both* procedural and substantive unconscionability). Here, plaintiff has not made any arguments as to why the arbitration provision was procedurally unconscionable – other than the same arguments that apply to the overall RAL agreement.

In any event, even assuming that plaintiff could surmount these problems and somehow get around *Prima Paint* in this manner, we would still order the parties to arbitrate based on a separate argument. Although plaintiff has ostensibly challenged the arbitration provision *as a whole*, he has really only challenged specific parts of the larger provision. For example, he has objected to the bar on class actions (the second sentence), the confidentiality restriction (the second to last sentence), and so on. Most notably, however, he has not argued that the "validity or enforceability" clause is itself unconscionable or unenforceable.

Following the separability analysis of *Prima Paint*, we think that the proper approach in this type of situation is to first analyze whether this particular clause is enforceable on its own terms as a separate contract *before* considering whether the overall arbitration provision is enforceable in every respect. In effect, this approach constitutes two levels of separability. Not only is the arbitration clause separable from the larger container contract, but the "who decides" clause is separable from the larger arbitration provision.[7]

This approach is not only a natural extension of the logic of *Prima Paint* but is also justified by the nature and purpose of a "who decides" clause, which is designed to preempt the Court from going on to decide the other arbitrability issues. As the Seventh Circuit stated in *Air Line Pilots Assoc. v. Midwest Express Airlines, Inc.*, 279 F.3d 553 (7th Cir. 2002), the arbitrability question is "usually" for a court but "parties to a contract can if they wish assign the determination of the arbitrability of a dispute to an arbitrator – but then *the question of whether they have done that* is for the court." *Id.* at 555 (emphasis added). This approach is also justified because the RAL agreement contains its own separability provision, which states that, "[i]f any provision of this Agreement or part thereof is deemed invalid, such invalidity shall not affect any other provision or part of this Agreement."

Under this approach, the only question then is whether the "validity or enforceability" clause is enforceable. The answer to this question is simple. As noted above, plaintiff has not even attempted to argue that this particular clause is unfair or unconscionable. And we cannot see how one could view this clause standing alone as so one-sided and oppressive as to shock the conscience. It merely states that the parties agree that the arbitrator should decide all arbitrability

---

[7]*Prima Paint* did not involve this type clause.

issues, meaning that the parties are free to raise their current arguments with the arbitrator. It is possible that the arbitrator will rule in favor of plaintiff on some of these arbitrability disputes or that the arbitrator will declare parts of the arbitration provision unenforceable. Our decision to defer these arbitrability disputes to the arbitrator will give the arbitrator the widest latitude in deciding how to resolve these disputes.

However, we find that one exception is warranted. Plaintiff argues that certain defendants have waived their arbitration right by implicitly choosing to proceed in federal court. Although we have not been able to find any cases addressing this specific issue, we think that it would be both unwise and unfair to send this particular arbitrability dispute to the arbitrator even though it seems to come within the literal language of the "validity or enforceability" clause. First, as discussed more fully below, the doctrine was created to prevent forum-shopping and was meant to protect the interests of the federal court. *See Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650 (7th Cir. 2000). As plaintiff correctly points out, this purpose would be frustrated if a party could wait until the eve of trial and then demand arbitration. Second, this Court is better positioned to resolve this waiver issue as it concerns what actions were taken in federal court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) ("for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better secure a fair and expeditious resolution of the underlying controversy – a goal of arbitration systems and judicial systems alike"). Third, unlike the other arbitrability disputes, this one is not in any way tied up with the merits of the case and thus raises none of the concerns of *Prima Paint*. For these reasons, we will address the waiver argument on the merits.

## II.    Waiver.

Plaintiff argues that some of the defendants waived their right to arbitration by opposing his effort to extricate his case from the *Zawikowski* settlement.

### A.    Legal Standards.

A party may waive an otherwise valid right to arbitrate by "choosing" to proceed in a judicial forum. *Grumhaus*, 223 F.3d at 650. This rule is based on the sensible notion that, "[o]nce a party selects a forum, the courts have an interest in enforcing that choice and not allowing parties to change course midstream." *Id.* Otherwise, there is a danger of forum-shopping: "we do not want parties [] taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002).

This type of waiver is typically an implicit waiver based on a course of conduct, and courts therefore look at the inferences arising out of the particular facts of each case. *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585, 587-88 (7th Cir. 1992) ("No rigid rule exists" and "the issue depends on the circumstances of each particular case"). The strongest indicator that a party has chosen a judicial forum is when it files a lawsuit in that forum. This is an affirmative step that obviously indicates a desire to be in court. In fact, the Seventh Circuit has held that filing a lawsuit creates a presumption that the party intends to waive its arbitration right. *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995).

When the party is a defendant, as here, the analysis is somewhat more complicated. The general question courts ask is whether a party did "all it could reasonably have been expected to

-16-

do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Id.* at 391. The most unequivocal way to assert an arbitration right is to immediately file a motion asking the court to compel arbitration. Timing is obviously important. The sooner the motion is filed the less chance there is for the party to forum-shop. For this reason, courts have uniformly held that no waiver occurs when a party files an immediate motion to compel. *See, e.g., Welborn*, 301 F.3d at 637 (no waiver where defendant moved to compel arbitration less than two months after suit was filed).

The failure to immediately demand arbitration, however, is not usually enough by itself to constitute waiver. Instead, more analysis is required. If there has been some delay, courts usually focus on three questions: (i) how long was the delay; (ii) was there an explanation for it; and (iii) what happened during the delay. Obviously, the longer a party waits, the more likely a court will find a waiver. But there is no bright-line rule. *See St. Mary's Medical Center*, 969 F.2d at 589 ("Perhaps ten months is not, standing alone, a substantial delay. A party needs time to assess its options.").

To find waiver, courts typically have found that the party not only waited too long in making the arbitration demand *but also* engaged in "substantial participation" in the litigation. *Welborn*, 301 F.3d at 637; *Ernst & Young v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 757 (7th Cir. 2002) ("acts of participation" were sufficient to waive arbitration right). As with the question of delay, there are few hard and fast rules as to what constitutes participation. However, participating in discovery and filing dispositive motions are usually regarded as enough. *See, e.g., Cabinetree*, 50 F.3d at 389 (waiver found where defendant removed case to federal court without at the same time demanding arbitration).

-17-

Participation in the litigation raises the concern of forum-shopping. If a party first demands arbitration only after it receives an adverse ruling in the lawsuit, courts inevitably will find waiver. *See, e.g., St. Mary's Medical Center*, 969 F.2d at 589 (defendant filed a motion for summary judgment "while at the same time never even mentioning arbitration until after it lost its motion");*Grumhaus*, 223 F.3d at 651 (after plaintiffs case was litigated and then dismissed in state court, they decided they wanted to arbitrate). In addition to looking at the overall delay and the activity that took place during the delay, courts have also asked whether there was a "plausible interpretation of the reason for the delay" other than the party simply changing its mind. *Cabinetree*, 50 F.3d at 391.

This case raises a specific question as to whether delay resulting from settlement efforts should be counted in the analysis. Although we have not found a lot of cases on point, the prevailing view is that attempts to settle a case should not be interpreted as a waiver of an arbitration right. *See Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981); *Walker v. J.C. Bradford*, 938 F.2d 575, 578 (5th Cir. 1991).

In *Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638 (7th Cir. 1981), the Seventh Circuit held that an 18 month delay in asking for arbitration was not enough to create a waiver. This finding was partly based on the fact that some of the delay was due to "attempts by the parties to settle the dispute." *Id.* at 641. The Seventh Circuit stated: "Preliminary negotiations concerning settlement are not sufficient to waive arbitration. [] Significant periods of delay prior to the onset of litigation are often necessary to allow the parties to engage in good faith efforts to resolve the controversy without reference to an adjudicatory body." *Id.* Although the delay in *Dickinson* took place prior to the filing of the lawsuit, there is nothing in the opinion that would suggest that

this conclusion should not also be extended to settlement efforts after the suit has been filed especially when those efforts take place in court.

Likewise, in *Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir. 1991), the Fifth Circuit held that the defendant had not waived its arbitration right, even though it waited 13 months after filing suit, because the parties were trying to settle the case during much of this time period. "Attempts at settlement [] are not inconsistent with an inclination to arbitrate and do not preclude the exercise of a right to arbitration." *Id.* at 578. *Accord Southwest Industrial Import & Export, Inc. v. Wilmod Co., Inc.*, 524 F.2d 468, 470 (5th Cir. 1975) ("Participation in settlement negotiations and even alleged contract breach or repudiation have been held not to preclude the right to arbitrate").

To summarize, the most important question is whether a party has "acted inconsistently" with the right to arbitrate and whether it was trying to gain some kind of tactical advantage by waiting to demand arbitration. *St. Mary's Medical Center*, 969 F.2d at 588. Because this type of a waiver is an implicit one based upon conduct, courts have held that the party asserting waiver bears a "heavy burden" and that courts should not "lightly infer" waiver. *Id.* at 590.

### B.    Application Of Law To Facts.

Applying these rules here, this Court finds that plaintiff has not met the heavy burden of establishing that these defendants waived their arbitration right. The reasons are as follows.

First, and perhaps most importantly, the defendants immediately filed motions seeking to arbitrate this case in 2000. There was no equivocation or delay. This action should by itself be enough to preserve the right to arbitration.

Second, defendants never asked for, nor received, any ruling on the merits in either this case or in *Zawikowski*. Nor has any discovery taken place. So it is hard to see how the defendants were forum-shopping.

Third, the two-year delay arising from the *Zawikowski* case was largely unavoidable and not something that was controlled by the defendants. Instead, this process was governed by this Court, by Judge Zagel, and then by the Seventh Circuit. Given the size and complexity of the *Zawikowski* case, it is not surprising that it took some time to sort through all the claims and that the Seventh Circuit took some time to rule on the consolidated appeals. But this delay was not caused by the defendants. Moreover, it made sense for all parties to first determine whether the Carbajal claims would be extinguished by the *Zawikowski* settlement before resolving the merits of the dispute – whether in court or in the arbitration forum. As noted above, plaintiff was the one who originally sought to delay briefing and ruling on the original motions to compel arbitration so that he could intervene in *Zawikowski*. And he argued to this Court that a delay in briefing would serve the interest of *all* parties because it was better to wait and see what happened in *Zawikowski*. It is therefore unfair for plaintiff to now complain that the defendants were engaging in delay.

Fourth, all the activities in *Zawikowski* related to an attempt to settle this and the other cases and therefore should not be construed as a waiver based on the Seventh Circuit's ruling in *Dickinson* and the Fifth Circuit's ruling in *Walker*. It is true that this settlement process was lengthy and complicated. However, the nature of this settlement effort was due to the size of the case and the unique demands that arise from settling class action lawsuits. Again, this

complexity is not something that the defendants created. In sum, there is a plausible reason for the delay.

Plaintiff tries to argue that it is really the defendants who have "chosen" to litigate this dispute in court. Reviewing the relevant procedural history, however, it is clear that *plaintiff* is the party who has taken the initiative at every point along the way. He filed the original lawsuit with this Court. When the defendants filed motions to compel arbitration, he asked to delay briefing on these motions so that he could file a motion to intervene in *Zawikowski*. Plaintiff filed the motion to intervene in *Zawikowski*. After Judge Zagel denied the motion and approved the settlement, plaintiff then filed a notice of appeal. Plaintiff blames the defendants for (i) filing a brief opposing his motion to intervene, and (ii) filing a brief in the Seventh Circuit opposing his appeal. But it is hard to see as a general matter how filing response briefs to motions and appeals filed by plaintiff could constitute the type of affirmative "choice" needed to find waiver.

Plaintiff also suggests, in various indirect ways, that the defendants were engaged in an improper effort to clandestinely rope his claims into the *Zawikowski* settlement without his knowledge. This point is simply not clear to us. No one has spelled out exactly how the Carbajal claims came to be included in the settlement. The best view is the one suggested by the Seventh Circuit, which stated that the Carbajal (and Peterson) claims were "absorbed" into the settlement and that those claims "got swept up in the settlement as it were accidentally."[8] *Reynolds*, 288 F.3d at 285, 286. The *Zawikowski* settlement was agreed to in 1999 – months before this case

---

[8]But even if the defendants were aggressively trying to include plaintiff's claims in the settlement, that does not lead to the conclusion that they were intending to waive their arbitration right. *See, e.g., Welborn*, 301 F.3d at 637 ("even strong-arm tactics . . . are not automatically enough to constitute an implied waiver of the agreement's arbitration provision").

was filed. By all accounts, the settlement was meant to be a global and comprehensive settlement and included very broad language in exchange for the payment of $25 million. It would not be surprising that defendants might have wanted to include plaintiff's claims within the settlement. As Judge Zagel stated, H&R Block and the other defendants in *Zawikowski* "hope[d] to close the door on a decade of RAL litigation." *Zawikowski v. Beneficial Nat'l Bank*, 2000 WL 1051879, *1 (N.D. Ill. July 28, 2000).

Plaintiff finally argues that the approximate two-year delay has caused him prejudice because he was forced to spend legal fees trying to extricate his putative class claims from the *Zawikowski* settlement and because the delay may have caused some of his claims to be time-barred. Assuming that these points are true and that no tolling or other equitable doctrines are available under the arbitral rules, this fact does not alter our conclusion. It is clear that plaintiff was taking a calculated risk in both (i) trying to bring a class action and (ii) in bringing his claims in federal court rather than arbitration. It is evident from his original complaint, which contains a long peremptory section attacking the "mandatory arbitration" provision, that plaintiff knew that he faced an uphill battle and that there was a good chance that this Court would eventually order him to proceed in arbitration.

## CONCLUSION

For all of the reasons stated above, the Court grants the defendants' motions to compel arbitration on the grounds stated herein. This action is dismissed. All other pending motions are moot.

ENTER:

JOHN A. NORDBERG
Senior United States District Court Judge

DATED: September 16, 2003